**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | |
|---|---|
| **LUPIE MARTINEZ AGUIRRE,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| vs. § | **Civil Action No. 1:07-CV-0149-C** |
| § | **ECF** |
| § | |
| **MICHAEL J. ASTRUE,** § | |
| **Commissioner of Social Security,** § | |
| § | |
| **Defendant.** § | |

**MEMORANDUM OPINION AND ORDER**

**THIS CASE** is before the court upon Plaintiff's complaint filed August 13, 2007, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of her complaint on March 5, 2008, and Defendant filed a brief on March 18, 2008. The parties consented to having the United States Magistrate Judge conduct all further proceedings in this case on October 5, 2007 (Doc. 12), and October 25, 2007 (Doc. 16). This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be affirmed and that Plaintiff's complaint should be dismissed with prejudice.

**I. STATEMENT OF THE CASE**

Plaintiff filed an application for disability insurance benefits on May 27, 2005, alleging disability beginning May 22, 2005. Tr. 14. Plaintiff's applications were denied initially and upon reconsideration. Tr. 14, 34-37. Plaintiff filed a Request for Hearing by Administrative Law Judge on October 21, 2005, and this case came for hearing before the Administrative Law Judge ("ALJ")

on September 12, 2006. Tr. 14, 39-40, 200-18. Plaintiff, represented by a non-attorney, testified in her own behalf. Tr. 204-13. Donna R. Humphries, a vocational expert ("VE"), appeared and testified as well. Tr. 14, 214-16. The ALJ issued a decision unfavorable to Plaintiff on December 12, 2006. Tr. 11-21.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that: Plaintiff met the disability insured status requirements through at least December 31, 2010, and Plaintiff had not engaged in substantial gainful activity at any time since May 22, 2005. Tr. 16. Plaintiff has "severe" impairments, including cervical stenosis, degenerative disc disease, and fibromyalgia. *Id*. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 18.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. Tr. 19. The ALJ found that Plaintiff could not return to her past relevant work as a post office distribution clerk. Tr. 19-20. He noted that Plaintiff was considered an individual of advanced age with a high school education. 20 C.F.R. §§ 416.963, 416.964; Tr. 20.

The ALJ found that Plaintiff retained the RFC to perform the requirements of a range of work activity, limited to jobs that do not require more than occasional lifting and carrying 25 pounds

or frequent lifting and carrying 10 pounds. Plaintiff can stand and/or walk and/or sit about 6 hours in an 8-hour workday. Plaintiff is limited to pushing/pulling no more than 25 pounds with upper extremities; cannot climb ramps, ladders, ropes, or scaffolds but can frequently balance, kneel, crouch, crawl, and stoop. Plaintiff is able to occasionally use the right arm and hand to reach overhead, frequently use the left upper extremity to reach overhead, and frequently finger, handle, and feel. Tr. 18. Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. Tr. 20. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of receptionist, with 40,000 jobs in Texas and 500,000 jobs nationally, and a data examination clerk, with 3,000 jobs in Texas and 40,000 jobs nationally. *Id.* The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 21.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 1, 2007. Tr. 8-10. After granting a 25-day extension, the Appeals Council denied Plaintiff's request and issued its opinion on June 8, 2007, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 3-5. The ALJ's decision, therefore, became the final decision of the Commissioner.

On August 13, 2007, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II. STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy. Tr. 20-21.

## III. DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to properly consider the limiting effects of Plaintiff's fibromyalgia, failed to give proper weight to the opinion of Plaintiff's treating physician, and erred in finding that Plaintiff's impairment was not of listing level severity. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A. Whether the ALJ failed to consider the limitations imposed by Plaintiff's impairments, including fibromyalgia.**

Plaintiff argues that the ALJ erred by failing to appropriately consider all of her impairments in making the RFC finding, particularly those limitations imposed by her fibromyalgia.

A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The existence of an impairment does not in itself establish disability; a claimant is disabled only if he or she is "incapable of engaging in any substantial gainful activity." *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986).

In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. See 20 C.F.R. § 404.1523. *Loza*, 219 F.3d at 393. If the ALJ finds a medically severe combination of impairments, "the combined impact of the impairments will be considered throughout the disability determination process." *Id*.

In his opinion the ALJ found that Plaintiff has "severe" impairments including fibromyalgia, cervical stenosis, and degenerative disc disease. Tr. 16. He noted Plaintiff's long history of neck pain with radiation into her shoulders and a history positive for arthritis and fibromyalgia. *Id*. He noted Plaintiff's reports of pain. *Id*. The ALJ found that Plaintiff could perform a range of modified work activity. Tr. 19. He specifically found that she retained the RFC for exertional activity that requires occasional lifting and carrying 25 pounds and frequent lifting and carrying of 10 pounds; the ability to sit for about six hours and the ability to stand and/or walk for about six hours during an 8-hour workday; no pushing and pulling more than 25 pounds with the upper extremities; no climbing ramps, ladders, ropes, or scaffolds, but can frequently balance, kneel, crouch, crawl, and stoop; the ability to use her right arm and hand for occasionally reaching overhead and frequently reaching overhead with the left upper extremity; and the ability to frequently finger, handle, and feel. Tr. 18. Plaintiff argues that the ALJ erred by failing to consider the limiting effects of her fibromyalgia. She notes that she has complained of fatigue, headaches, and difficulty sleeping. Plaintiff argues that the ALJ "failed to include Plaintiff's complaints of headaches, fatigue, all over body pain, inability to sleep, or increased cervical pain due to fibromyalgia in his RFC." Pl. Brief at 11.

Plaintiff underwent an examination by Paul W. McDonough, M.D., an orthopedic surgeon, on May 5, 2005. Tr. 107-08. Dr. McDonough noted that Plaintiff complained of neck pain with radiation to her bilateral shoulders and a history of some intermittent pain in her arms but none recently. Tr. 107. Dr. McDonough noted upon examination that Plaintiff had a limited range of motion of the cervical spine, diffuse paraspinous cervical tenderness, mild tenderness in the shoulder region, and maybe some mildly decreased sensation to light touch on her right middle finger. *Id.* He noted that otherwise Plaintiff's sensation was intact to light touch in bilateral upper extremities. *Id*. He noted that her reflexes were 1+ bilaterally in biceps, triceps, and brachial radialis, although it was

difficult to assess her motor strength because of pain. *Id*. He opined that Plaintiff was motor and sensory intact to the lower extremities. *Id*.

Dr. McDonough noted that x-rays showed straightening of the cervical spine, with minimal disk space narrowing at C4-5 and C5-6. Tr. 107. He noted that an MRI showed a very small, slightly left-sided C4-5 disk osteophyte complex, and a right-sided small osteophyte complex at C5-6. *Id*. He indicated that he had had a long discussion with Plaintiff and her husband. Tr. 108. He opined that surgical treatment would not give her any improvement as she was not having any pain radiating distal to her shoulder and thus did not have any significant radiculopathy.[1] *Id*. He indicated that Plaintiff was highly concerned about her work environment and that there might be secondary gain involved. *Id*. His assessment was chronic neck pain with an exacerbation, minimal cervical stenosis, and no current evidence of significant radiculopathy. He opined that Plaintiff should do physical therapy exercises on her own, should take a nonsteroidal anti-inflammatory medication, and could work without significant restrictions with a 50-pound lifting limit. *Id*.

Plaintiff was also treated by Norman J. Dozier, M.D., a pain management specialist. Tr. 110-11. Dr. Dozier noted on May 12, 2005, that an MRI of the cervical spine revealed a C4-5 mild to moderate central stenosis and minimal encroachment to the left neural foramen and a spur defect on the right at C5-6 with some mild compromise of the right neural foramen. Tr. 110. He noted that Plaintiff, upon examination, exhibited severe limitation of her cervical flexion/extension, lateral bending, and rotation. Tr. 111. He noted no focal motor, sensory, or DTR deficits in either upper extremity, although she was somewhat deconditioned in the right trapezius. *Id*. He noted that plaintiff was notably tender over the cervical paraspinous musculature. *Id.*

---

[1] Radiculopathy is a disorder of the spinal nerve roots. STEDMAN'S MEDICAL DICTIONARY (27th ed. 2000) at 1503.

Dr. Dozier's impression was neck pain with minimal radiculopathy secondary to spinal stenosis and muscle spasms. He opined that Plaintiff's regimen, including physical therapy, was good, and administered an epidural steroid injection. Tr. 111.

Plaintiff underwent physical therapy in May 2005. Tr. 129. Her occupational therapist noted that Plaintiff's cervical motion was extremely limited and that her progress with physical therapy was minimal and fluctuated every day. Tr. 130.

Plaintiff's treating physician, T. James Wray, D.O., indicated on May 27, 2005, that Plaintiff is "medically disable[d]." Tr. 165. A progress note of that date indicates that Plaintiff experienced no improvement with either physical therapy or epidural steroid injection. Tr. 164. In a letter dated July 22, 2005, Dr. Wray noted that Plaintiff's diagnoses include cervical spondylosis and degenerative disc disease of the cervical spine, cervical stenosis, and fibromyalgia. Tr. 160. He noted that Plaintiff's symptoms included increase of chronic cervical pain within five to ten minutes of beginning work at the post office, increased pain with prolonged sitting and standing, limitations of rotation movement of the cervical spine, and radiating pain to the left upper extremity with no hand grip weakness. *Id*. He noted that Plaintiff was able to wash dishes, but not heavy pans, and could not use a vacuum or broom because of her cervical pain. *Id*. He noted that upon examination of the cervical spine, Plaintiff was tender at C1 through C7, with range of motion at 25 degrees on flexion, 20 degrees on extension, and rotation of 40 degrees to the left and right. Tr. 160. Dr. Wray recommended that Plaintiff not perform her current work duties which included standing and boxing mail up to two hours per day, lifting no more than 70 pounds, and sitting and preparing return mail for one to two hours per day. Tr. 161. A May 2, 2005, MRI of the cervical spine indicated spondylosis and degenerative disc changes at C3-4, 4-5, and 5-6 and a question of cervical muscle spasm. Tr. 174. Progress notes from May 22, 2006, and June 6, 2006, indicate Plaintiff's complaints of headaches. Tr. 183-84. Plaintiff also reported trouble sleeping on March 1, 2006, and March 23,

2006. Tr. 186-87. Dr. Wray noted Plaintiff's reports of sleeping four to five hours per night in his letter dated December 26, 2005. Tr. 191. He noted his recommendation that Plaintiff not return to her work at the post office and that she perform her household activities taking frequent breaks of every 10 to 15 minutes. Tr. 192.

There must be evidence in the record to support the ALJ's RFC determination. The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Social Security Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. SSR 96-8p. As noted in SSR 96-8p,

> RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the most.

In his opinion the ALJ noted Plaintiff's testimony of washing dishes in five minute increments, watching the TV, praying the rosary, reading her Bible, sitting for 20 minutes at a time, lifting a gallon of milk with pain, requiring a sleeping pill at night, and leaving the house only three days a week. Tr. 18. The ALJ indicated that he had found that Plaintiff's subjective complaints were

not entirely credible. He noted that his RFC assessment adequately addressed the limitations that Plaintiff testified to and that were supported by the record. Tr. 19.

Plaintiff essentially argues that the ALJ erred by failing to accept her allegations and testimony as to the limitations imposed by her fibromyalgia. Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms. The ALJ must first:

> [C]onsider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p. The record demonstrates that the ALJ found that Plaintiff's medically determinable severe impairments or combination of impairments included her fibromyalgia Tr. 16.

The record also indicates that the ALJ considered, but ultimately did not accept, Plaintiff's subjective allegations as to the limitations imposed by her impairments. The ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citation omitted)). The ALJ's opinion demonstrates that he appropriately considered and discussed the record as a whole, as well as Plaintiff's specific subjective allegations regarding the limitations imposed by Plaintiff's impairments, in making his credibility determination. The ALJ is the factfinder, and his evaluation of the credibility of subjective complaints is, therefore, entitled to judicial deference if supported by substantial evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988); *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987). His credibility determination is

supported by substantial evidence in the record. The ALJ did not err in considering the evidence, including Plaintiff's subjective allegations regarding the limitations imposed by Plaintiff's impairment.

The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the VE need only reasonably incorporate the limitations accepted by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 435-36 (no reversible error where the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations). Here, the ALJ included those limitations he found supported by the record in his RFC assessment and in his hypothetical questions. The ALJ noted that he considered Plaintiff's impairments, including her reports of pain with radiation into her shoulders exacerbated by lifting on the job. Tr. 16. He noted the medical evidence as to Plaintiff's very limited cervical range of motion, her treatment for chronic pain, and her reports of her activities. Tr. 17. He also noted Dr. Wray's opinion that Plaintiff should not return to her work at the post office and that she should modify her activities of daily living. Tr. 17-18. The ALJ also noted Dr. McDonough's opinion that Plaintiff would not need significant restrictions at work and his recommendation of a 50-pound lifting restriction. Tr. 17. The ALJ noted his agreement with Dr. Wray's opinion that Plaintiff could not perform her past relevant work at the post office. Tr. 19. He noted the state agency medical consultant's ("SAMC") opinion that Plaintiff was limited to performing the full range of light exertional activity. *Id*. The ALJ ultimately did not accept either Dr. McDonough's or the SAMC's opinion as to Plaintiff's RFC, indicating that he gave Plaintiff the "benefit of [the] doubt with respect to her allegations of postural and manipulative limitations," finding that she could perform a range

of work[2] with limitations on pushing and pulling no more than 25 pounds with her upper extremities; a limitation on climbing ramps, ladders, ropes, or scaffolds; and a limitation to only occasionally using her right arm and hand for reaching overhead. Tr. 18-19.

While Plaintiff argues that it is unclear how the ALJ could have possibly believed he was accommodating her limitations in making this RFC determination, the record indicates that his RFC finding was more limited with regard to lifting than that contained in the opinion of Dr. McDonough and was more limited with regard to additional limitations than the opinion of the SAMC. In making his RFC determination, the ALJ pointed to the evidence in the record and his credibility determination. "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. The court finds that the ALJ appropriately incorporated those limitations he found supported by the record into his RFC determination and did not err by failing to consider the limitations that Plaintiff alleges were imposed by her fibromyalgia or in making his credibility determination. The ALJ

---

[2] The regulations provide that:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(a). The ALJ found that Plaintiff could perform a range of work which included lifting and carrying 25 pounds, a requirement which exceeds that of light work.

properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790.

**B.	Whether the ALJ erred by failing to give appropriate weight to the opinion of Plaintiff's treating physician.**

Plaintiff also alleges that the RFC determination is not supported by substantial evidence in the record because the ALJ failed to give appropriate weight to the opinion of her treating physician, Dr. Wray. Plaintiff correctly notes that in two separate letters, Dr. Wray opined that Plaintiff should seek medical retirement.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. Moreover, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)). The ALJ was thus not required to give any weight to the opinion of Dr. Wray that Plaintiff was disabled or unable to work.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. Pursuant to Soc. Sec. Ruling 96-2p (July 2, 1996) ("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank*, 326 F.3d at 620. Therefore the ALJ was not required to discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) in declining to accept Dr. Wray's opinion that Plaintiff should seek medical retirement.

Plaintiff argues that the only doctor of record who opined that Plaintiff is not disabled is Dr. McDonough. The ALJ did, however, note the objective medical findings indicating that Plaintiff experienced cervical pain and limitation of motion. The ALJ did not err by failing to give appropriate weight to Dr. Wray's conclusory statement indicating that Plaintiff should seek medical retirement. The ALJ was not required to give such statement any particular weight, was not required to evaluate this opinion using the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d), and did not err in evaluating Dr. Wray's opinion. The ALJ's RFC finding is supported by substantial evidence in the record.

**C.     Whether the ALJ erred in finding that Plaintiff's impairments did not meet or equal in severity Listing 1.04 of the Listing of Impairments.**

Plaintiff argues that the ALJ erred in finding at step 3 of the sequential evaluation process that her impairments did not meet or equal in severity any impairment in the Listing of Impairments. She

argues that the medical evidence of record demonstrates that her impairments satisfy or are equivalent to the requirements of Section 1.04 of the Listing of Impairments. In his decision the ALJ noted that he had specifically considered the listed impairments that address the musculoskeletal system. Tr. 16. He noted that Plaintiff's severe impairments include cervical stenosis, degenerative disc disease, and fibromyalgia. *Id*.

In order to obtain a determination of disabled under the Listing of Impairments, an applicant must show that her impairments meet or equal one of the listings in appendix 1 of 20 C.F.R. Part 404. To meet the listing under § 1.04, the Plaintiff must show that she has:

> "[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord [along w]ith:
>
> A    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B.    Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C.    Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."

*See* 20 C.F.R. Part 4, Subpt. P, App. 1, §1.04. Plaintiff specifically argues that she has met the criteria of § 1.04 A and has therefore demonstrated presumptive disability.

The ALJ determines at step 3 of the 5-step sequential analysis whether a claimant's severe impairments meet or equal one or more of the Listings. At step 3 the burden of proof rests with a claimant. Ultimately, the claimant has the burden of proving that his impairment or combination of

impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). That burden is to provide and identify medical signs and laboratory findings that support *all* criteria for a step 3 impairment determination. *McCuller v. Barnhart,* 72 Fed.Appx. 155, 158 (5th Cir. 2003); *Selders,* 914 F.2d at 619; 20 C.F.R. § 404.1526(a). If a claimant fails to provide and identify medical signs and laboratory findings that support all criteria of a Listing, the court must conclude that substantial evidence supports the ALJ's finding that the required impairments for any Listing are not present. *Selders,* 914 F.2d at 620. To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Plaintiff argues that there is substantial evidence in the record demonstrating that she met the the criteria of § 1.04 A of the Listing of Impairments, noting that she has cervical stenosis with nerve root compression characterized by a neuro-anatomic distribution of pain, or at a minimum, the equivalent, in that she has spinal cord compression.

The record clearly indicates that Plaintiff has experienced cervical stenosis and a limitation of movement of the cerivical spine. However, although Plaintiff notes that her pain has been described as "radiating," the medical evidence does not indicate nerve root compression characterized by a neuro-anatomic distribution of pain or motor loss accompanied by sensory or reflex loss. Dr. McDonough noted that she did not have any significant radiculopathy, specifically noting that Plaintiff was not having any pain radiating distal to her shoulder. Tr. 108. Dr. Dozier noted no focal motor, sensory, or DTR deficits in either upper extremity and his impression was neck pain with minimal radiculopathy secondary to spinal stenosis and muscle spasms. Tr. 111. Dr. Wray noted limitations of rotation movement of the cervical spine and radiating pain to the left upper extremity with no hand grip weakness. Tr. 160.

Plaintiff notes that her motor strength has not been measured upon examination due to pain but argues that the record shows a "weakening" in Plaintiff's shoulder area.

Section 1.00 E of the Listing of Impairments explains:

> [A] report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs, or both upper and lower arms, as appropriate, at a stated point above and below the knee or elbow given in inches or centimeters. Additionally, a report of atrophy should be accompanied by measurement of the strength of the muscle(s) in question generally based on a grading system of 0 to 5 , with 0 being complete loss of strength and 5 being maximum strength. A specific description of atrophy of hand muscles is acceptable without measurements of atrophy but should include measurements of grip and pinch strength.

20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00 E(1). Plaintiff argues that records from PAC Vince Viola, of Spine Abilene, indicate that she has weakness in the shoulder area. Tr. 197. However, these same notes indicate sensation to light touch and pinprick are unchanged and intact, grip and pinch strength are intact, and triceps and biceps strength are at 4+/5. *Id*.

Plaintiff bears the burden of proving that her impairment or combination of impairments meets or equals the listings at step 3 of the sequential evaluation process. 20 C.F.R. § 404.1520(d); *Selder*, 914 F.2d at 619 (citing *Sullivan*, 493 U.S. at 521). Plaintiff also argues that her impairment is of sufficient medical severity to constitute medical equivalence. She must provide medical findings that support each of the criteria for the equivalent impairment determination. *Id*. The evidence of record does not include medical findings to support each of the criteria of § 1.04 A of the Listing of Impairments, nor does it contain the type of detailed description of motor loss or muscle atrophy accompanied by sensory or reflex loss as described in § 1.00 E § 1.04 A. Plaintiff failed to carry her burden at step 3 to show that she met or equaled the criteria of the appropriate section of the Listing of Impairments. The court finds that the ALJ did not err in finding that Plaintiff's impairments did not meet or equal in severity § 1.04, or any other section of the Listing of Impairments, and his finding is supported by substantial evidence in the record.

## IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, the court finds that the ALJ did not err by failing to consider the limitations imposed by Plaintiff's impairments, did not err by failing to appropriately weigh and consider the opinion of Plaintiff's treating physician, and did not err by finding that Plaintiff's impairments did not meet or equal in severity any impairment in the Listing of Impairments. The court further finds that the ALJ's opinion and the RFC determination are supported by substantial evidence in the record. Therefore, the Commissioners's decision should be affirmed, and Plaintiff's complaint should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner denying Plaintiff's applications for a period of disability and disability insurance benefits is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's complaint filed August 13, 2007, is **DISMISSED WITH PREJUDICE.**

A judgment in accordance with this decision shall be entered.

**SO ORDERED.**

DATED this 16th day of September,

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**